

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

PD-0956-08

JOE CHRISTIAN SALAZAR, Appellant

v.

THE STATE OF TEXAS

On Discretionary Review of Case 07-07-432-CR
of the Seventh Court of Appeals,
Potter County

*WOMACK, J., delivered the opinion of the Court, in which MEYERS, PRICE,
JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J.,
filed an opinion concurring in the judgment.*

The issue in this case is whether a habitation inherently provides notice that entry is

forbidden. We hold that it does.

## I. Background

Realtor Linda Pohlmeier owned the residence at 2506 South Bivins, in Amarillo.

Although no one lived in the residence, Pohlmeier was in the process of remodeling it for resale.

On January 29, 2007, Pohlmeier locked the doors and windows of the residence, except for one window which lacked a lock, and left the house. At 6:50 p.m., the Amarillo police dispatcher alerted officers that an anonymous caller had reported an ongoing burglary at the residence. Three officers were dispatched to the scene and saw the appellant leave the back door of the house and run away from them after they called out to him. They soon caught him. One of the officers returned to the residence and found various household items and supplies – including a light fixture, a ceiling fan, halogen work lamps, three boxes of children's clothes, a box of mortar, and an air intake vent – stacked neatly in the alley, just behind the backyard fence. Pohlmeier identified the items as having been inside the house, except for the boxes of clothing which she did not own.

The appellant was indicted for burglary of a habitation. The indictment read that the appellant "did then and there intentionally or knowingly enter a habitation without the effective consent of Linda Pohlmeier, the owner of the habitation and attempted to commit or committed theft of property." At trial, the appellant requested a charge on the lesser-included offense of criminal trespass. The trial court refused. The jury found the appellant guilty of burglary of a habitation. He was sentenced to seven years in prison.

On appeal, the appellant argued that the trial court erred when it denied him the instruction on the lesser-included offense of criminal trespass. The Court of Appeals rejected the appellant's claim, holding that "the elements or facts necessary to convict one of criminal trespass were missing from the charge of burglary as modified by the indictment at bar."[1] In particular, the indictment did not allege the element of notice that entry was forbidden. The Court

---

[1] *Salazar v. State*, 259 S.W.3d 232, 234 (Tex. App.–Amarillo May 28, 2008).

stated that "not until the accused becomes aware of the owner's sentiment and then acts or refuses to act does he commit criminal trespass."[2] Consequently, the Court held that the offense of criminal trespass was not a lesser-included offense of burglary of a habitation, and the trial court did not err in refusing to include it in the jury charge.

The Court of Appeals based its holding on this court's decision in *Hall v. State*,[3] which it read to have modified the test for inclusion of lesser-included offenses in a jury charge.[4] In *Hall*, this court held that "the pleadings approach is the sole test for determining in the first step whether a party may be entitled to a lesser-included-offense instruction," in which "[t]he availability of a lesser-included instruction . . . still would depend on the second step, whether there is some evidence adduced at trial to support such an instruction."[5] According to the Court of Appeals, one element of criminal trespass, namely notice, was not present in burglary as alleged in the indictment, so criminal trespass was not a lesser-included offense and the trial court did not err.

Two months later, the Court of Appeals reheard the appellant's case, this time with the appellant claiming that because his entry was into a "habitation," then that entry was inherently forbidden. This inherent prohibition, he argued, automatically established the notice that criminal trespass requires. Again, the Court of Appeals affirmed. It said that "the question should be

---

[2] *Salazar*, 259 S.W.3d, at 234.

[3] 225 S.W.3d 524 (Tex. Cr. App. 2007).

[4] *Salazar*, 259 S.W.3d, at 233.

[5] *Hall*, 225 S.W.3d, at 535.

decided on a case-by-case basis, and that simply describing the structure as a 'habitation' does not *ipso facto* suffice."[6]

In this court, the appellant now argues that in *Moreno v. State*,[7] we previously held that a "habitation" does inherently give notice that entry is forbidden, and that the Court of Appeals' decision conflicts with this court's decision. We granted review.

## II. Discussion of Law

### A. Statutes

Burglary, according to Section 30.02(a) of the Penal Code, is committed when a person, "without the effective consent of the owner, …:

"(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

"(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

"(3) enters a building or habitation and does commits or attempts to commit a felony, theft, or an assault."

Criminal trespass is committed by a person who "enters or remains on or in property, including an aircraft or other vehicle, of another without effective consent, or [who] enters or remains in a building of another without effective consent and he:

"(1) had notice that the entry was forbidden; or

---

[6] *Salazar v. State*, 259 S.W.3d 232, 235 (Tex. App.–Amarillo July 1, 2008).

[7] *Moreno v. State*, 702 S.W.2d 636, 640 n.7 (Tex. Cr. App. 1986); *see also Jackson v. State*, 3 S.W.3d 58, 62 (Tex. App.–Dallas 1999). This court has overruled *Moreno*'s method of evaluating a lesser-included-offense. *Hall*, 225 S.W.3d, at 531 n. 30. We have not addressed *Moreno*'s discussion of habitation.

"(2) received notice to depart but failed to do so."[8]

For purposes of the criminal-trespass statute, "'Notice' means: (A) oral or written communication …, (B) fencing or other enclosure obviously designed to exclude intruders …, (C) a sign or signs posted or at the entry to the building, reasonably likely to come to the attention of intruders, indicating that entry is forbidden," or other types of markings or crops on property.[9]

## B. "Habitation"

There is a hierarchy of properties that carry distinct levels of forbidden entry. In this case, we can look at this hierarchy in three levels: unimproved land, buildings, and habitations. The first, unimproved land, may simply be an open field with nothing more than a fence surrounding its border. "The criminal trespass statute, V.T.C.A. Penal Code, § 30.05 specifies that fencing is notice that entry is forbidden."[10] Thus, if there is some sort of indication of a separation of property in the form of a fence, a border, or even a sign, then the entrant has explicit notice that entry is forbidden.

The next body of property is the "building," which also confers some explicit notice of forbidden entry. According to the Penal Code, a "building" is defined as "any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use."[11] Buildings are typically commercial properties or government offices or

---

[8] PENAL CODE § 30.05(a).

[9] PENAL CODE § 30.05(b)(2).

[10] *Mitchell v. State*, 807 S.W.2d 740, 742, n.3 (Tex. Cr. App. 1991).

[11] PENAL CODE § 30.01(2).

perhaps professional places of employment. Entry is not forbidden unless there are circumstances notifying the entrant. For example, there are locked doors or signs that indicate privacy or that give notice that entry by the general public is forbidden in certain, if not all, areas. In these circumstances, the owner provides notice to forbid entry.

The third in the hierarchy of properties carries the highest threshold for privacy: the "habitation." A "habitation" is defined by the Penal Code as "a structure or vehicle that is adapted for the overnight accommodation of persons, and includes: (A) each separately secured or occupied portion of the structure or vehicle; and (B) each structure appurtenant to or con-nected with the structure or vehicle."[12] The most significant element of the definition is the adaptation "for the overnight accommodation of persons."[13] "What makes a structure 'suitable' or 'not suitable' for overnight accommodation is a complex, subjective factual question fit for a jury's determination."[14] The jury may look to a host of considerations such as the contents of the structure, including bedding, electricity, plumbing, or furniture; the jury may also look to and consider the type of structure and its typical use as a means for overnight accommodation.[15]

Because of its nature, a "habitation" carries a higher right of privacy. In fact, most "habitations" are not open to the public. We learn through common experience and societal norms that it is essential to seek permission to enter a habitation, rather than to enter it without

---

[12] PENAL CODE § 30.01(1).

[13] *Id.*

[14] *Blankenship v. State*, 780 S.W.2d 198, 209-10 (Tex. Cr. App. 1989) ("The determination whether a burglarized place is a 'building' or 'habitation' will be overturned on appeal only if the appellant can show that no reasonable trier of fact could have found the place to have been a habitation under the criteria above.").

[15] *Id.* (It should be noted that while "[a]ll of these factors are relevant; none are essential or necessarily dispositive.").

permission. Request for entry may be made by non-verbal communication (such as a knock on the door) as well as by verbal communication. If a habitation did not inherently give notice that entry is forbidden, then there would be no need to include a doorbell, knocker, or even a lock in a home.[16] Because we value this right of privacy to the highest degree, and because a "habitation" is a form of property that carries with it the highest degree of that privacy, we follow *Moreno* and hold that a habitation *inherently* provides notice that entry is forbidden.

This inherent quality of a habitation's notice that entry was forbidden was relied on by the drafters of the Penal Code. A Practice Commentary to the Code was prepared by two attorneys; one was the staff director of the Texas Penal Code Revision Project, and the other was a staff lawyer for the Project who assisted the House Committee on Criminal Jurisprudence during the passage of the Penal Code Bill in 1973.[17] Their commentary to the trespass section of the Code was quite clear on this point: "Whether the trespass is on land or into a building, the victim must have given some notice that entry is forbidden and the actor must enter without 'effective consent.' Subsection (b)(2) sets out three methods of giving notice. Under Subsection(b)(2)(B), *a habitation gives notice inherently* and requires no special effort by the occupant."[18]

It is as true for the burglary offense as for the trespass offense that a habitation inherently gives notice that entry is forbidden.

---

[16] This statement does not presume that homes without doorbells, knockers, or locks are not habitations. Rather, we employ these terms by illustrative use as examples that aid in depicting the inherent notice that entry is forbidden in habitations. A habitation might include one, several, or none of these items, and perhaps might include others not mentioned in this opinion.

[17] Preface, 3 Vernon's Texas Codes Annotated – Penal Code, at III (1974).

[18] *Id.*, Practice Commentary to § 30.05, at 258 (emphasis added).

III. Application

In this case, the Court of Appeals did correctly identify *Hall* as the controlling standard for assessing lesser-included offenses.[19] However, in its analysis of the first step, the Court determined that the legal elements of criminal trespass were not comparable to the elements of burglary of a habitation as they were alleged in the indictment. According to the Court, the notable element absent from the indictment was *notice* of forbidden entry, which is a requirement of criminal trespass and yet nowhere mentioned in the indictment. In this case, however, it would not have been necessary to expressly include the language of notice in the indictment because notice is inherent in a "habitation."[20] Further, pursuant to *Hall*, "the elements of the lesser offense do not have to be pleaded if they can be deduced from the facts alleged in the indictment."[21] We believe it can be deduced from the indictment that the appellant had notice, quite simply, because notice is inherent to a habitation and the indictment read "burglary of a habitation."

Additionally, at the rehearing, the Court of Appeals focused its discussion of *Moreno* and its progeny, *Jackson* and *Grissam,* on the element, "enclosed structure," as a defining characteristic of a "habitation."[22] However, we do not define a "habitation" according to that element. The words "enclosed structure" indeed fall within the Penal Code's definition under Section 30.01; however they define a "building," not a "habitation."[23] In fact, "[t]he Penal Code defines

---

[19] *Hall*, 255 S.W.3d, at 535-36. (The Court must ask whether "an offense is a lesser-included offense of the alleged offense . . . by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense.").

[20] *Moreno*, 702 S.W.2d, at 636; *Jackson*, 3 S.W.3d, at 58.

[21] *Hall*, 225 S.W.3d, at 535.

[22] *Salazar*, 259 S.W.3d, at 235.

[23] PENAL CODE § 30.01(2).

'habitation' to include 'structures appurtenant to or connected with,' but does not require the structure to be 'enclosed.'"[24] Rather, the Penal Code's definition focuses on the adaptation of a structure "for the overnight accommodation of persons," and does not indicate whether that structure must be enclosed.[25]

In its discussion of the three aforementioned cases, the Court of Appeals immediately distinguished them based on the element of "enclosed structure," by stating that "one could reasonably deduce that the structure at issue was built in a way that prevented those standing outside from entering."[26] As discussed, the "enclosed structure" pertains to the "building" and not the "habitation." Nonetheless, the Court attempted to prescribe parameters to the "habitation" with respect to an "enclosed structure." Not only is the analysis misplaced on an element of a "building," but also, this discussion would suggest that a "habitation" must be defined and described in detail in each indictment. To do so would be both cumbersome and outside the scope of *Hall*. *Hall* merely requires that the *elements* of the proposed lesser-included offense be compared first with the elements of the indictment before moving on to the evidence.[27] Thus, when the Court of Appeals held that "such information [was] missing from the indictment at bar,"[28] it appeared to be mixing the two steps, by requiring that evidence from the second step appear in the first step.

---

[24] *St. Julian v. State*, 874 S.W.2d 669, 670 (Tex. Cr. App. 1994), *citing* PENAL CODE § 30.01(1)(B).

[25] PENAL CODE 30.01(1).

[26] *Salazar*, 259 S.W.3d, at 235.

[27] *Hall*, 225 S.W.3d, at 535-36.

[28] *Salazar*, 259 S.W.3d, at 235.

## A. *Hall* and *Moreno*

In *Hall*, this Court clarified the test to be used for lesser-included offenses, selecting the pleadings approach as the requisite test.[29] "The first step is to [compare] the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense."[30] Only the statutory elements of the offense (as modified in the indictment) should be compared; not the evidence presented at trial.[31] The second step in the analysis is to "ask whether there is evidence that supports giving the instruction to the jury."[32] The trial court must then ask the question posed by Article 37.09(1) of the Texas Code of Criminal Procedure: "[A]re the elements of the lesser offense 'established by the proof of the same or less than all the facts required to [establish] the commission of the offense charged?'"[33] If they are not, then a trial court acts properly in withholding the instruction.

Upon issuing *Hall*, this court overruled several of its cases, including *Moreno*, which had followed varying standards for assessing lesser-included offenses.[34] Nevertheless, while the method of analyzing lesser-included offenses was overruled, other aspects of the *Moreno* opinion were not. In *Moreno*, this court defined a "habitation" as inherently giving sufficient notice that

---

[29] *Hall*, 225 S.W.3d, at 535. Prior to *Hall*, courts had used four different analyses for providing lesser-included-offense charges: the "strict-statutory," "cognate-pleadings," "cognate-evidence," and "inherently related" approaches. *Id.*, at 525.

[30] *Hall*, 225 S.W.3d, at 535-36.

[31] *Id.,* at 536.

[32] *Id.*

[33] *Id.*, at 536, *citing* CODE CRIM. PROC. art. 37.09(1).

[34] *Hall*, 225 S.W.3d, at 524.

entry is forbidden because it is an "enclosure obviously designed to exclude intruders."[35] In *Hall*, this court merely set forth new requirements for assessing lesser-included offenses, making no distinction between *Moreno*'s definition of a "habitation" and that of the Penal Code. As a result, *Moreno*'s definition of "habitation" was left intact.

IV. Conclusion

Because a habitation implicitly gives notice that entry is forbidden, in this case it would not be necessary to explicitly include in the indictment for burglary of a habitation an allegation that the appellant had notice that his entry was forbidden. To do so would be redundant. Thus, the Court erred at the first step of the *Hall* analysis in determining whether the appellant was entitled to a lesser-included-offense charge and then further erred in interpreting a "habitation" as not inherently providing notice that entry is forbidden. Because we hold today that a "habitation" does imply notice of forbidden entry, we reverse the Court of Appeals' judgment and remand to the Court for further proceedings consistent with this opinion.

Delivered June 3, 2009.
Publish.

---

[35] *Moreno*, 702 S.W.2d, at 640, n.7; *see also Jackson*, 3 S.W.3d, at 62.