In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00081-CR


______________________________




EDWARD JOHNSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Fourth Judicial District Court


 Rusk County, Texas


Trial Court No. CR09-010




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Shortly after Renee Glaspie heard a truck drive onto her property in rural Rusk County on a 
Sunday afternoon in August 2008, she and her mother, Gladys Glaspie-Starling, saw a man, later
identified as Edward Johnson, on their property, with his truck parked in the driveway. Johnson first
knocked on the door to the house, but the women did not answer because they did not know him. 
Receiving no answer, Johnson moved to a second building near the house and knocked there, again
receiving no answer. He moved to a nearby pear tree, from which he picked a couple of pears and
started eating. He finally went to a third building, removed an unlocked lock from the hasp on the
door, entered the third building, emerged carrying two gas cans, and started carrying the gas cans
toward his truck. Glaspie emerged from the house to confront Johnson, while her mother called law
enforcement. Glaspie told Johnson to put down her property. In response, Johnson asked her not to
call the police and protested to her that he was not stealing. After putting the gas cans down, Johnson
proceeded to his truck and eventually started to back out to leave the premises, when the police
arrived. Johnson told the police that he had run out of gas. 

 Johnson was convicted of burglary of a building (1) and sentenced to twelve years' imprisonment
in the institutional division of the Texas Department of Criminal Justice. (2) Johnson's sole issue on
appeal asserts that the evidence is factually insufficient to prove that he had the intent to commit theft. 
Finding the evidence sufficient, we affirm the judgment of the trial court.

 When conducting a factual sufficiency review of the evidence, we begin with the presumption
that the evidence was legally sufficient. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). 
All evidence is viewed in a neutral light, favoring neither party. Steadman v. State, 280 S.W.3d 242,
246 (Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We are
to determine if the evidence supporting the verdict, although legally sufficient, is nevertheless so
weak that the verdict is clearly wrong or manifestly unjust or whether the verdict is against the great
weight and preponderance of the conflicting evidence. Watson, 204 S.W.3d at 414-15.

 While a factual sufficiency review allows a very limited degree of "second-guessing" the jury,
the review should be deferential, with a high level of skepticism about the jury's verdict before a
reversal can occur. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson, 204
S.W.3d at 417.

 The factual sufficiency of the evidence should be measured by the elements of the offense as
defined by a hypothetically-correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997); Hernandez v. State, 190 S.W.3d 856, 863 (Tex. App.--Corpus Christi 2006, no pet.). 
A hypothetically correct jury charge in this case would require the State to prove beyond a reasonable
doubt that Johnson intentionally or knowingly entered a building or a portion of a building, not then
and there open to the public, without the effective consent of the owner with the intent to commit
theft. Tex. Penal Code Ann. § 30.02(a)(1). The indictment in this case charged Johnson with
entering a building, not then open to the public, without the consent of the owner, Gladys Glaspie-Starling, with the intent to commit theft. Johnson contends that the State failed to prove that he acted
with the intent to commit theft.

 A person acts with intent "with respect to the nature of his conduct . . . when it is his conscious
objective or desire to engage in the conduct . . . ." Tex. Penal Code Ann. § 6.03(a) (Vernon 2003). 
In a burglary prosecution, the specific intent to commit theft may be inferred from the circumstances. 
Simmons v. State, 590 S.W.2d 137, 138 (Tex. Crim. App. [Panel Op.] 1979); Martin v. State, 148
Tex. Crim. 232, 186 S.W.2d 80 (1945). The intent to commit theft may be inferred from a person's
actions or conduct. McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). The jury is
empowered to determine the issue of intent. Moreno v. State, 702 S.W.2d 636, 641 (Tex. Crim. App.
1986), overruled in part on other grounds by Salazar v. State, 284 S.W.3d 874 (Tex. Crim. App.
2009), and Hall v. State, 225 S.W.3d 524 (Tex. Crim. App. 2007).

 In this case, the jury could find that it was Johnson's intent to commit theft when he removed
the lock from the hasp, entered the tool house without the owner's consent, removed two gas
cans--one for gasoline and one for diesel--therefrom, and started carrying them toward his truck. (3) 
While Johnson stated that he was not stealing when confronted by Renee Glaspie, the jury was free
to weigh that statement along with all of the other circumstances to determine the credibility of the
statement. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994) (it is within exclusive
purview of jury to determine credibility of witnesses and weight to be given statement of witness). 
Johnson need not have removed the property from the premises in order for the State to prove intent
to commit theft. See Ortega v. State, 626 S.W.2d 746, 749 (Tex. Crim. App. [Panel Op.] 1981);
Gutierrez v. State, 666 S.W.2d 248, 250 (Tex. App.--Dallas 1984, pet. ref'd).

 Moreover, Johnson tried to flee when confronted by Renee Glaspie. The jury could well have
inferred intent to commit theft from Johnson's attempt to flee when confronted. This evidence, taken
along with all of the other circumstances, including Johnson's removal of the fuel cans from the tool
shed and his request that Renee Glaspie not call the police, is conduct a rational jury could have
viewed as the conduct of a person who had been caught committing a burglary. We conclude that a
neutral view of the evidence does not demonstrate that the evidence is so obviously weak as to
undermine this Court's confidence in the jury's verdict. 

 We affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 30, 2009

Date Decided: October 1, 2009


Do Not Publish
1. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003) provides that "a person commits an
offense if, without the effective consent of the owner, the person: (1) enters a habitation, or a
building (or any portion of a building) not then open to the public, with intent to commit a felony,
theft, or an assault . . . . "
2. The State enhanced the punishment range with prior convictions.
3. The jury could have also concluded that, if all Johnson was doing was trying to borrow some
gasoline for his truck, he would not have needed the diesel fuel in the second can.



, who then talked to Ferguson and asked Ferguson to perform several field-sobriety tests,
which Wilmot witnessed and testified Ferguson performed poorly. Wilmot described Ferguson as
swaying during the field-sobriety tests; based on his observations, Wilmot concluded Ferguson "was
highly intoxicated." 



 C. Joe Herrera

 Joe Herrera is a seven-year veteran detective and a certified peace officer with the
Waxahachie Police Department. (1) Herrera was working the night of October 7, 2006, when he was
dispatched to a location within the city about a possible intoxicated driver. Herrera located the
suspected vehicle on East Marvin Street and continued following the vehicle until its driver
eventually parked it. While Herrera followed the suspected vehicle, Herrera noted that the
automobile was traveling in excess of the posted speed limit; Herrera did not, however, note that the
suspected vehicle was being driven in an erratic or reckless manner. Once the suspected vehicle
stopped, Herrera witnessed Wilmot make contact with the driver; Wilmot later reported to Herrera
that Wilmot believed that the suspect driver might be intoxicated. At that point, Herrera exited his
patrol vehicle and began talking to the suspect, later identified in open court as Ferguson. Herrera
then asked Ferguson to perform four field-sobriety tests--the horizontal gaze nystagmus (HGN) test,
the walk-and-turn test, the one-legged-stand test, and the vertical gaze nystagmus (VGN)
test--which Ferguson did perform. 

 According to Herrera, Ferguson exhibited six signs of intoxication (out of a maximum of six
possible signs) during the HGN test. Herrera described Ferguson as having slurred speech and the
latter's breath as having "a strong odor of alcohol." Herrera further told the jury that, during the
HGN test, Ferguson had a hard time following the officer's directions. 

 During the walk-and-turn test, Ferguson exhibited five out of eight potential clues suggesting
the person being tested is intoxicated. First, Ferguson had difficulty maintaining his balance while
the officer instructed the suspect on how to perform this test. Ferguson also started the test too soon,
stopped too soon during the test, made an improper turn, and took the incorrect number of steps. 
These poor results suggested to Herrera that Ferguson was intoxicated because (according to
Herrera) two errors during the walk-and-turn test are sufficient to suggest the person is intoxicated. 
 During the one-legged-stand test, Ferguson exhibited two of four signs of intoxication,
according to Herrera. Ferguson swayed and put his foot down during the test. Herrera testified that
exhibiting merely two clues during this test is sufficient to indicate intoxication. The final roadside
test, VGN, revealed no evidence that Ferguson was intoxicated. (2) However, when the VGN test was
conducted back at the police station, Herrera detected nystagmus at that time. 

 Based on the totality of Ferguson's performance during the field-sobriety tests, Herrera
concluded Ferguson was intoxicated "[b]y an unknown type of alcoholic beverage." Herrera then
arrested Ferguson and took him to jail. At the jail, Ferguson was given another opportunity to
perform the field-sobriety tests and give a sample of his breath for analysis of its alcohol
concentration. Ferguson performed the field-sobriety tests, but he refused to give a breath sample. 
According to Herrera, Ferguson's ability to perform the three field-sobriety tests improved slightly
once he got to the police station. Nevertheless, Ferguson was formally charged with felony DWI. 
Herrera told the jury he had no doubt in his mind Ferguson was intoxicated at the time in question. 
 D. The Videotape

 The videotape played for the jury shows Ferguson performing several field-sobriety tests
outside and later again at the police station. During the roadside walk-and-turn test, Ferguson had
to be told several times to put his right foot in front of his left foot, rather than the other way around. 
Ferguson also fell out of the proper stance during instruction on multiple occasions. During the one-legged-stand test, it appears from the videotape that Ferguson almost completely lost his balance on
more than one occasion. Ferguson also failed to follow the officer's instructions on how to perform
the test in that, when he made a mistake, Ferguson would restart his counting rather than merely
continue from the last number he uttered. 

 From the police station portion of the videotape, the jury would have been able to notice that
Ferguson appeared to be extremely unsteady on his feet during the walk-and-turn test. He also fell
out of the proper standing position while Herrera again demonstrates that particular test. During the
one-legged-stand test, Ferguson's speech appeared to be slurred and he exhibited poor balance. He
also counted improperly during this test. Finally, the jury heard Ferguson refuse to give a sample
of his breath for analysis. 



III. Ferguson's Evidence

 Courtney Benavidez and Ferguson both testified for the defense. Benavidez testified that she
has known Ferguson for over twenty years. In fact, it was at her home that the police arrested
Ferguson in connection with the charges that are the basis of this appeal. Benavidez told the jury
that Ferguson is the caretaker for his father, who has Alzheimer's disease. Ferguson often comes
over to Benavidez' house to escape the strain he experiences as a result of taking care of his father;
he will sometimes sleep at the home of Benavidez and her husband. 

 Ferguson admitted during his testimony that he had consumed only two beers at the Courtside
Bar on the day in question; these drinks were consumed during the course of about an hour. 
Ferguson also admitted he had been previously convicted of DWI on two or more occasions. He had
not eaten anything during the day, and he had recently gone to visit his uncle. Ferguson reminded
the jury that he had been wearing cowboy boots at the time of the field-sobriety tests and, therefore,
he believed he had done well in performing the tests. Ferguson told the jury that he tends to fight
when he becomes intoxicated; however, because he did not exhibit any such characteristics on the
night in question, he was not intoxicated. 

IV. Analysis

 The jury heard testimony from Herrera that he believed, based on Ferguson's performance
of the field-sobriety tests and based on Ferguson's general demeanor, that Ferguson had lost the
normal use of his mental and physical faculties by reason of the introduction of alcohol into his
system around the time he was operating a motor vehicle. The jury had also heard from a
disinterested citizen, Ieppert, who described Ferguson as being intoxicated while inside the coffee
shop; Ieppert then continued to describe the latter's subsequent driving as being "unsteady." Finally,
the jury had the opportunity to view the videotape of Ferguson's performance during both the
roadside and police station tests. As outlined above, the videotaped sobriety tests contain several
suggestions that Ferguson was intoxicated during the time at issue. Additionally, the jury could have
legitimately deduced that Ferguson was intoxicated based on his refusal to give a breath sample. See
Gaddis v. State, 753 S.W.2d 396, 399-400 (Tex. Crim. App. 1988). Thus, there is evidence to
support the jury's verdict that Ferguson operated a motor vehicle while intoxicated.

 The jury, however, also heard testimony from Ferguson that he had consumed only two beers
on the day in question, that he was wearing cowboy boots while trying to perform the field-sobriety
tests (which he believed explained his uncoordinated performance), and that he himself believed he
was not intoxicated at the time at issue in this case. This is some evidence contrary to the State's
case for conviction. 

 On balance, however, there was evidence from which a jury could have found the State
proved each essential element of the charge beyond a reasonable doubt. The evidence is, therefore,
legally sufficient to support the jury's verdict under the applicable appellate standards. See Johnson,
23 S.W.3d at 7. Additionally, we cannot say the great weight and preponderance of the evidence in
this case contradicts the jury's verdict, nor can we conclude that the evidence presented to the jury
was so weak that the jury could not have found Ferguson guilty of--subsequent offense. We must,
therefore, conclude the evidence is also factually sufficient. See Roberts, 220 S.W.3d at 524.

 For the reasons stated, we overrule both of Ferguson's points of error and affirm the trial
court's judgment.



 Jack Carter

 Justice



Date Submitted: September 25, 2007

Date Decided: October 18, 2007


Do Not Publish

1. Since the time of Ferguson's arrest, Herrera has been promoted to detective within the police
department. 
2. Herrera testified that VGN is used primarily to determine whether the suspect's intoxication
is attributable to having a higher dose of alcohol or drugs. Herrera testified Ferguson did not exhibit
nystagmus (a jerking of the eyes) during this test.