# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00024-CR

**William Aaron James, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW OF CALDWELL COUNTY
### NO. 40444, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant William Aaron James guilty of criminal trespass of a habitation. *See* Tex. Penal Code § 30.05. The trial court sentenced James to 365 days' confinement in county jail, but suspended the imposition of that sentence and placed James on twenty-four months' community supervision. On appeal, James asserts that the evidence is insufficient to support his conviction because the record fails to establish that he had notice that he was forbidden to enter the habitation. *See id.* § 30.05(a)(1). We affirm the judgment of the trial court.

## BACKGROUND

Melissa Barnhart, the complaining witness in this case, and her husband Brian Barnhart had known James and his wife for several years.[1] James was Brian's supervisor at his

---

[1] In order to avoid confusion, we refer to Melissa and Brian Barnhart by their first names.

work, and James, Brian, Melissa, and James's wife had worked together in the past. Melissa continued to be good friends with James's wife, and both were active participants in the local PTA.

The Barnharts' relationship with James was strained, however, because eight years before this alleged trespass, James had twice entered the Barnharts' home unannounced, without their permission, when Brian was not home. On both occasions, Melissa told James "he needed to go," and according to Melissa, James understood that Melissa did not want him in her house. Melissa testified that she did not immediately tell Brian about these incidents because James told her that "if I were to say anything, then it would be turned around against me and . . . it would be me that looked bad." Melissa was subsequently demoted by James's wife, who was her supervisor at the time. The Barnharts moved out of Texas for several years, but eventually moved back to Luling. Brian returned to his previous job with James as his supervisor. The Barnharts continued to interact with James and his wife socially and would visit each others' homes on occasion.

On the morning of the alleged trespass, Melissa was not feeling well. She was in her bed, under the covers, and undressed because she had recently taken a bath. She received a call from James at around 11:40 a.m., but she did not answer. Approximately twenty minutes later, Melissa's housekeeper was washing dishes in the kitchen. The housekeeper saw James open the side-door to the house without knocking, "poke in," and ask if Melissa was home.[2] The housekeeper said that Melissa was home, but as she called out to let Melissa know about the visitor, James entered the home, walked directly to Melissa's bedroom, and entered the room without knocking. Melissa

---

[2] In their briefs, the parties assert that James knocked before entering the Barnharts' home, but the housekeeper unequivocally testified that "[James] didn't knock."

2

testified that James was breathing heavily and proceeded to sit on the bed next to her, put his hand on her shoulder, and then ask her if she was "naked underneath there." Melissa became "terrified" and told James that he needed to leave. James paused for a moment, said "I'll call you later," and left.

Melissa immediately called Brian and told him what had taken place, and the Barnharts called the local sheriff's office to report the event. James was subsequently charged with criminal trespass of a habitation. *See id.* § 30.05(d)(3)(A)(i) (making trespass a Class A misdemeanor if committed in habitation). At trial, Melissa, Brian, and the housekeeper testified about the incident. The jury found James guilty of the offense alleged, and the trial court sentenced James as outlined above. This appeal followed.

## DISCUSSION

In his sole issue on appeal, James asserts that the evidence is insufficient to support his conviction. Specifically, James argues that Melissa's and Brian's testimony established that James had been invited to their home before, that they never explicitly told him that he could not enter their home without an invitation, and that they never explicitly told him that he could not visit when Brian was not home. Therefore, according to James, the evidence is insufficient to establish that he "had notice that the entry was forbidden."[3] *See id.* § 30.05(a)(1); *see also Bader v. State*,

---

[3] Criminal trespass occurs when an accused enters the property of another without effective consent and the accused either "(1) had notice that the entry was forbidden or (2) received notice to depart but failed to do so." *See* Tex. Penal Code § 30.05(a)(1)–(2). In this case, the sole allegation is that James entered Melissa's home when he had notice that the entry was forbidden.

3

15 S.W.3d 599, 606 (Tex. App.—Austin 2000, pet. ref'd) (explaining that "notice that entry was forbidden" is essential element of criminal trespass).

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We view this evidence in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* Therefore, we presume that the jury resolved any conflicting inferences and issues of credibility in favor of its verdict. *Id.*

In this case, the evidence is sufficient to establish that Jones had notice that his entry into the Barnharts' habitation was forbidden. In *Salazar v. State*, the court of criminal appeals addressed whether direct notice must be given by the occupier of a habitation to put the public on notice that entry into the habitation is forbidden. *See* 284 S.W.3d 874, 877–78 (Tex. Crim. App. 2009). As the court explained, "[w]e learn through common experience and societal norms that it is essential to seek permission to enter a habitation, rather than to enter it without permission." *Id.* "[B]ecause a 'habitation' is a form of property that carries with it the highest degree of privacy, we follow *Moreno* and hold that a habitation *inherently* provides notice that entry is forbidden." *Id.* (citing *Moreno v. State*, 702 S.W.2d 636, 640 n.7 (Tex. Crim. App. 1986), *overruled on other*

4

*grounds*, *Hall v. State*, 225 S.W.3d 524, 539 (Tex. Crim. App. 2007)). Thus, the court in *Salazar* concluded that an intruder has notice that he is forbidden to enter a habitation because a habitation, by its very nature, provides that notice. *See id.*; *see also State v. Kepley*, No. 04-09-00462-CR, 2010 WL 3582389, at \*2 (Tex. App.—San Antonio Sept. 15, 2010, no pet.) (mem. op., not designated for publication) (citing *Salazar*, 284 S.W.3d at 880, for proposition that accused's entry into habitation is sufficient evidence that accused had notice that entry was forbidden).

James asserts that *Salazar* is distinguishable from this case because, unlike the stranger in *Salazar*, James had been invited into the Barnharts' home on several occasions and the Barnharts never explicitly told him that he needed permission to enter the home in the future. However, the mere fact that a person has been invited into a home in the past does not eliminate the societal expectation that he must be given permission to enter in the future. *See Salazar*, 284 S.W.3d at 877 (explaining that notice that permission is needed before entering a habitation is based on "common experience and societal norms"). Melissa testified that she did not have the type of relationship with James where either party could "drop by" the other's home unannounced and enter without express permission. Based on this testimony as well as James's conduct in opening the side door without knocking, poking his head around the kitchen before entering, proceeding into the home without Melissa's knowledge, and walking directly to the bedroom—arguably the most private area of the home—without permission, the jury could have reasonably concluded that James had notice that he was forbidden entry into the Barnharts' home. *See id.* (noting that visitors are generally expected to request entry and be given permission before entering habitation); *Kepley*, 2010 WL 3582389, at \*2; *see also Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990,

5

no writ) (noting that defendant's conduct indicating consciousness of guilt can be "one of the strongest kinds of evidence of guilt").

Therefore, we conclude that the evidence is sufficient to support James's conviction for criminal trespass of habitation. James's sole appellate issue is overruled.

## CONCLUSION

Having overruled James's sole issue on appeal, we affirm the trial court's judgment of conviction.

_____
Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   November 20, 2013

Do Not Publish

6