In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00018-CR


______________________________




SCOTT LEROY BROWN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law #3


Smith County, Texas


Trial Court No. 003-81104-08




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Following a confrontation with his soon-to-be ex-father-in-law, Scott Leroy Brown was
convicted of criminal trespass. (1) See Tex. Penal Code Ann. § 30.05 (Vernon Supp. 2008). He
appeals that conviction, challenging the legal and factual sufficiency of the evidence to support the
conviction. We will recount and review the relevant evidence and conclude that the evidence is
legally and factually sufficient. We affirm the trial court's judgment.

I. APPLICABLE LAW

 A. Elements of Criminal Trespass

 A person commits an offense if he enters or remains on or in property, including an aircraft
or other vehicle, of another without effective consent or he enters or remains in a building of another
without effective consent and he: (1) had notice that the entry was forbidden; or (2) received notice
to depart, but failed to do so. Tex. Penal Code Ann. § 30.05(a); Salazar v. State, PD-0956-08,
2009 Tex. Crim. App. LEXIS 731 (Tex. Crim. App. June 3, 2009). Here, focusing on Section
30.05(a)(2), Brown lodges several attacks directed generally at whether he "failed to do so."

 B. Standards of Review

 When reviewing the legal sufficiency of the evidence, an appellate court must ask "whether,
after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt." Jackson v.
Virginia, 443 U.S. 307, 319 (1979). This standard mandates that the reviewing court accord
deference to the fact-finder's duty to resolve conflicts in testimony and other evidence. Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This review standard requires an examination
of all the evidence, both properly and improperly admitted, to determine whether the cumulative
force of all the evidence (direct, circumstantial, or both) supports the verdict when such evidence is
viewed in the light most favorable to that verdict. Id.; see also Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).

 Factual sufficiency review has subtle differences. "Evidence may be factually insufficient
if: '1) it is so weak as to be clearly wrong and manifestly unjust or 2) the adverse finding is against
the great weight and preponderance of the available evidence.'" Berry v. State, 233 S.W.3d 847, 854
(Tex. Crim. App. 2007) (quoting Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). "Such
a factual sufficiency review requires the reviewing court to consider all of the evidence." Id.
(quoting Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)). "A clearly wrong and
unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly
demonstrates bias." Id. (quoting Sells v. State, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003);
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)).

II. SUMMARY OF RELEVANT FACTS

 According to Robert Walker, (2) after the two met on the roadway, Brown tailgated him to the
Walker residence, parked on an easement, blocking Walker's truck in, and began "hollering and
cussing and raising cane [sic]" as he walked up toward the house. In response to Brown's cursing,
Walker "did holler back at him," instructing Brown to get off his property. He testified that he told
Brown three times to leave the property, two times before he called the sheriff's department, and
once after he had called the sheriff's department. 

 Walker testified that the initial confrontation, that portion of the exchange occurring before
Walker went inside to call 9-1-1, lasted two or three minutes. After Walker directed Brown to leave
the property and when Walker expressed his intention of calling the sheriff's department, Brown
walked further up the driveway, pounded the truck's tailgate with his hand, opened the driver's side
door of Walker's truck, and took out the .38 revolver that Walker kept in the door's storage
compartment. As Walker was going inside to call the sheriff's department, Brown waved the gun
in the air all the way back to his own vehicle. 

 Wanda Walker had come to the door by now, having heard the commotion outside. She
described Walker as upset and "hollering back and forth with [Brown]." She asked her husband
what was going on, to which he replied that Brown had Walker's gun. While Walker was inside
making the telephone calls, Wanda, who had stepped back inside to watch from a long window near
the door, yelled at Brown to leave the property. Brown then directed his insults at her and remained
on the property. 

 Walker finished his call to the sheriff's department, called the gated community's security
department, and then, after learning from his wife that Brown had returned the gun to the truck, (3)
came back out the front door. Brown was still standing by his own vehicle and still cursing and
yelling "vile" obscenities about Walker's daughter. At this point, both Walkers were outside the
house, yelling at Brown to leave their property. Walker informed Brown that he had called the
authorities and that they were on their way to the Walkers' home. Walker then directed Brown for
the third time to leave the property. Brown "cussed a little more and raised a little more cain and
said a few more words I'm not going to repeat and got in his vehicle and drove off." 

 Wanda estimated that five to seven minutes passed from the time she first saw Brown with
the gun to the time that he returned the gun. On cross-examination, Walker explained that he stayed
outside only a short time in an attempt to convince Brown to leave the property and return the gun
before he went in to call 9-1-1. When repeatedly asked about the exact duration of each stage of this
confrontation, Walker admitted some uncertainty: "I'm going to tell you I was so scared and nervous
I don't remember times precise." 

 Brown testified in his own defense that he got out of his vehicle and that he and Walker
exchanged words for approximately five minutes about the roadway incident. He admitted that he
was asked to leave. In fact, he admitted that he was asked twice to leave before he did so. He
admitted that even after he was instructed to leave, he went up toward the house to get into Walker's
truck and get the gun (although he explained that he put it right back). 

III. DISCUSSION

 Legal and Factual Sufficiency of the Evidence

 Brown attacks the sufficiency of the evidence from a number of directions. He points to
evidence that would undermine the evidence that after receiving notice to depart, he "failed to do so."

 1. Left after a short period of time

 Brown maintains that "it took a few minutes before he actually left the property." "He may
not have left the property the first instance he was asked to leave but ultimately he did leave after a
very short period of time." Brown fails to acknowledge that during that "very short period of time,"
he entered Walker's truck, took out Walker's gun, threatened Walker, screamed at the Walkers, and
cursed the Walkers and their family. Brown was very active in this "very short period of time."

 We point out that this is not a matter of Brown being directed to leave the property and it
taking Brown some amount of time to physically leave the property. That is, we are not considering
the time it took for Brown to initiate and complete his departure from the Walker property. We can
foresee instances where that might take some amount of time, depending on the distance one must
go to effect his departure or the means by which one must effect his departure. Such is not the case
here.

 Brown's contention is somewhat similar as that urged by the appellant in Cole v. State, Nos.
14-03-00083-CR, 14-03-00084-CR, 2004 Tex. App. LEXIS 2250 (Tex. App.--Houston [14th Dist.]
Mar. 11, 2004, pets. ref'd [2 pets.]) (mem. op., not designated for publication). Cole contended that
the evidence was legally and factually insufficient to prove she failed to leave a stadium after she
was instructed to do so. Id. at *5. She claimed that because she was walking down a ramp, which
was a route that could have been used to leave the stadium, the State failed to prove that she failed
to depart when asked to do so. Id. The Houston Fourteenth Court pointed out, however, that Cole's
supervisor had asked Cole to leave approximately ten times before the supervisor went to get the
police officer working as stadium security and that Cole failed to leave. Id.

 That Brown ultimately made the decision to leave, seemingly upon learning that the sheriff's
department was on its way, does not diminish the evidence that he failed to depart in a reasonable
time following his repeated warnings to do so. The law does not allow a person to remain, after
notice has been given, to finish saying or doing what the actor chooses to say or do, and leisurely
depart on his or her own terms or when the urge to do so strikes. We recognize that the time from
issuance of notice to a full and complete departure cannot be instantaneous; the laws of physics
require that it will necessarily take some amount of time for the person to comply with the
instruction to leave. Here, however, it is not a close call. Brown lingered long enough to continue
his ranting and threatening behavior and to get into Walker's truck, get the gun, and return the gun
upon reconsideration of that idea. Under the circumstances, the delay between the repeated notices
to depart and Brown's decision to finally do so is unreasonable.

 2. No verbal refusal to depart

 Brown also points out that he never verbally refused to leave the property. Based on the
evidence that Brown physically remained on the property after having been instructed to leave and
chose to remain while screaming, cursing, burglarizing a vehicle, and waving a gun, the jury was
permitted to infer that Brown refused to leave the property. No words to that effect were necessary;
it is clear from Brown's conduct that he chose to not leave the property. We add that Section 30.05
of the Texas Penal Code does not require that the actor verbally express a refusal to leave the
property after being instructed to do so. The absence of a verbal refusal to leave the property does
not render the evidence legally or factually insufficient.

 3. Left on his own volition

 Brown challenges the evidence that would show that he failed to depart after receiving notice
to do so because the evidence shows that he did, in fact, leave the property and did so under his own
volition. In other words, since he did not have to be forcibly removed from the Walkers' property,
he contends that there is no evidence that he failed to depart the property after having been directed
to do so. Section 30.05 also does not require than the actor be forcibly removed in order to constitute
an offense. Brown's delayed decision to leave came only after repeated instructions to do so, a great
deal of confrontation, the commission of another criminal offense, and an unreasonable amount of
time. The fact that he did leave under his own power is of no consequence. Evidence that Brown
left before law enforcement authorities arrived does not mean that the State failed to present legally
or factually sufficient evidence that Brown failed to leave after receiving notice to do so.

IV. CONCLUSION

 The record is clear that Brown was told to leave and failed to do so. In fact, he admits that
he was twice told to leave and did not do so. Along with Walker's testimony that he told Brown to
leave at least three times and Wanda's testimony that she, too, directed Brown to leave the premises,
Brown's own admissions that he remained on the property after being instructed to depart constitute
legally sufficienct evidence that he failed to depart. The record shows that notice was given and
received and, as shown by Brown's remaining on the property, ignored or disregarded.

 The jury had before it legally sufficient evidence to permit the jury to infer from Brown's
words and actions that Brown failed to depart after having been directed several times to do so. The
cumulative force of the evidence supports the jury's verdict when viewed in a light most favorable
to that verdict. We conclude that legally sufficient evidence supports the jury's findings as to the
failure element of criminal trespass.

 After reviewing the evidence, we cannot say that the evidence that Brown failed to depart
within the meaning of Section 30.05(a) is so weak as to be clearly wrong and manifestly unjust. Nor
can we conclude that the jury's finding on this element is against the great weight and preponderance
of the available evidence. We conclude that factually sufficient evidence supports the jury's
determination and overrule Brown's point of error to the contrary.

 Having concluded that legally and factually sufficient evidence supports the jury's verdict,
we overrule Brown's points of error and affirm the judgment of the trial court.




 Bailey C. Moseley

 Justice


Date Submitted: June 25, 2009

Date Decided: July 31, 2009


Do Not Publish

1. This case is a companion case to Brown v. State, cause number 06-09-00017-CR in which
Chief Justice Morriss reviewed the legal and factual sufficiency of the evidence to support Brown's
conviction for burglary of a vehicle. We affirmed that conviction. A more detailed account of the
facts is presented in that lead opinion. Originally appealed to the Twelfth Court of Appeals, this case
was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. 
See Tex. Gov't Code Ann. § 73.001 (Vernon 2005). We are unaware of any conflict between
precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. See Tex. R.
App. P. 41.3.
2. As Robert Walker played a more central role in this matter than his wife, Wanda Walker,
this opinion will refer to him as Walker. We will refer to Wanda Walker as Wanda.
3. As Walker called community security and the sheriff's department, Wanda remained at the
long window and watched Brown stand by his vehicle with the gun up for a while and then walk
toward Walker's truck. When Walker came back from making telephone calls, she told him that she
thought Brown had returned the gun to the truck, although she did not clearly see him do so because
her vision was obstructed by the angle of the house. 


able assurance, upon examination of the record as a whole,
that the error did not influence the jury's verdict or had but slight effect. Rivera-Reyes v. State, 252
S.W.3d 781, 787 (Tex. App.--Houston [14th Dist.] 2008, no pet.).

 While this evidence did pertain to Norman's credibility, Perkins's relevancy objection was
not abandoned when other evidence of Norman's credibility was admitted without objection; such
evidence was of a general nature, and was not the same evidence as was elicited here. See Massey
v. State, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996) (holding if defendant objects to admission
of evidence, but same evidence is subsequently introduced from another source without objection,
defendant waives his earlier objection). The record of this case persuades us, however, that error
occasioned by the admission of this improper testimony was harmless. The evidence of credibility
was cumulative of testimony provided by Foreman and was unrelated to the evidence upon which
Perkins was convicted. The admission of the testimony in question was not error of such magnitude
that the jury's proper evaluation of the evidence was disrupted. Roberts, 866 S.W.2d at 776. 

 We overrule this point of contention. 

IV. CONCLUSION

 Because Norman's testimony was corroborated by evidence that tends to connect Perkins to
the transaction and because error in the admission of irrelevant testimony regarding Norman's
credibility was harmless, we affirm the judgment of the trial court. 



 Bailey C. Moseley

 Justice


Date Submitted: November 13, 2009

Date Decided: November 18, 2009


Do Not Publish
1. The indictment charged delivery of less than one gram of cocaine, which offense is
punishable as a state-jail felony. See Tex. Health & Safety Code Ann. § 481.112(b) (Vernon
Supp. 2009). Cocaine is classified as a penalty group 1 controlled substance. See Tex. Health &
Safety Code Ann.§ 481.102 (3)(D) (Vernon Supp. 2009). Perkins was also charged as an habitual
offender with two previous final felony convictions, the second of which occurred after the first
conviction became final. The punishment range thus increased to that of a second-degree felony. 
See Tex. Penal Code Ann. § 12.42(a)(2) (Vernon Supp. 2009). Because this offense was otherwise
punishable as a felony of the second degree, and because it was shown at the punishment phase of
the trial that the offense was committed within 1,000 feet of premises owned by an institution of
higher learning (Paris Junior College), the offense became punishable as a first-degree felony. See
Tex. Health & Safety Code Ann. § 481.134(b)(1) (Vernon Supp. 2009). The punishment range
for a first-degree felony is life or five to ninety-nine years in prison. See Tex. Penal Code Ann.
§ 12.32 (Vernon Supp. 2009). 
2. Norman initially believed the "unknown person" to be Perkins's nephew; later, it became
apparent that Norman was dealing with Perkins himself.
3. Foreman and two other officers were positioned at Noyes Stadium, observing the
transaction.
4. Because Norman went upstairs to his apartment to visit the restroom when his mother
returned home, Foreman was unable to observe him continually while awaiting Perkins's arrival.
5. This offense took place within 1,000 feet of Paris Junior College, an institution of higher
learning.
6. Perkins was indicted on an additional charge of delivery of a controlled substance as a result
of a sting operation in February 2008; these matters were consolidated for trial. The conviction
resulting from the earlier indictment is the subject of a separate appeal before this Court, styled
James Edward Perkins v. State, cause number 06-09-00012-CR, the opinion in which is issued of
even date herewith. 
7. Perkins argues that the testimony in question should have been excluded under Rule 403 of
the Texas Rules of Evidence. Rule 403 provides that relevant evidence may be excluded on the
ground that the probative value of the evidence is nevertheless substantially outweighed by the
danger of unfair prejudice. See Tex. R. Evid. 403. An objection that the evidence is not relevant
is not synonymous with an objection that the evidence is unfairly prejudicial under Rule 403. See
Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g).