# NO. 12-14-00129-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JEFFREY EDWARD ALLEN,* *APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jeffrey Edward Allen appeals his conviction for burglary of a habitation. In his sole issue on appeal, Appellant challenges the legal sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

Appellant was charged by indictment with the offense of burglary of a habitation, a second degree felony. The indictment also included a felony enhancement paragraph. Appellant pleaded "not guilty," and the case proceeded to a bench trial. At the conclusion of the trial, the court found Appellant guilty of burglary of a habitation, found the enhancement paragraph to be "true," and assessed Appellant's punishment at fifteen years of imprisonment. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In his sole issue, Appellant argues that the evidence is legally insufficient to support his conviction. More specifically, he contends that the evidence does not support a conclusion that the structure was a habitation or that he entered the structure with the intent to commit theft.

**Standard of Review**

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of its verdict. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.).

**Applicable Law**

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, the person enters a habitation with the intent to commit theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). "Habitation" means a structure that is adapted for the overnight accommodation of persons. *See* TEX. PENAL CODE ANN. § 30.01(1) (West 2011). It includes each separately secured or occupied portion of the structure and each structure appurtenant to or connected with the structure. *See id.*

The most significant element of the definition of a habitation is the adaptation "for the overnight accommodation of persons." *Salazar v. State*, 284 S.W.3d 874, 877 (Tex. Crim. App. 2009). "What makes a structure 'suitable' or 'not suitable' for overnight accommodation is a complex, subjective factual question fit for a [fact finder's] determination." *Blankenship v.*

2

*State*, 780 S.W.2d 198, 209 (Tex. Crim. App. 1989) (op. on reh'g). The inquiry could be guided by reference to whether someone was using the structure as a residence at the time of the offense; whether the structure contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (such as a house, apartment, condominium, sleeping car, mobile home, or house trailer). *Id.* All of these factors are relevant, but none are essential or necessarily dispositive. *Id.* The determination of whether a place is a habitation will be overturned on appeal only if the defendant can show that no reasonable trier of fact could have found the place to have been a habitation under the criteria above. *Id.* at 209-10.

In a burglary prosecution, specific intent to commit theft may be inferred from the circumstances. *Lewis v.* State, 715 S.W.2d 655, 657 (Tex. Crim. App. 1986). Intent may be inferred from the defendant's conduct and surrounding circumstances. *Turk v. State*, 867 S.W.2d 883, 887 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

## The Evidence

Wayne Frazier testified that he and his son, Judson, lived next door to a property in Elkhart, Texas, that was owned by John Teel's mother. Wayne maintained the yard and kept an eye on the property. Judson related that in April 2013, he heard his dog barking outside his window and went to check a wild hog trap they had set up on the Teel property. As Judson started back to his house, he heard the barn doors on the Teels' metal building, an "abnormal" occurrence, and watched as the barn doors closed "all of a sudden." He did not see anyone, but heard banging on the walls. Judson returned to his house and informed his father.

Wayne and Judson entered the Teel property, and Wayne testified that he heard beating and banging inside the building. He saw that the doors of the building were shut, and called the sheriff's department. Jeff Taylor and Johnny Gordon, Anderson County sheriff's deputies, responded to Wayne's call. Deputy Taylor also heard some banging inside the building, looked for an entrance, and saw a double door tin entrance that was closed. Each deputy drew his duty weapon, held a flashlight in the other hand, swung the door open, and observed two people inside—Appellant and a woman. Deputy Taylor also saw a motorcycle in the building. Appellant and the woman were wearing dark clothing and dark gloves, and were holding flashlights. Deputy Taylor testified that the boards on the double doors were pried open, indicating a forcible entry.

3

Photographs admitted into evidence showed motorcycle tire prints on the grass of the property, the motorcycle owned by Appellant, a tool kit sitting on the top of the motorcycle's gas tank, a ladder under a light, wires cut from the rafters of the building, a panel box where electrical wires had been stripped off and cut, conduit electrical wire that had been cut, and copper wiring that had been removed. Deputy Taylor testified that he found copper wire shavings in a bucket. Brian Chason, an Anderson County Sheriff's Department sergeant, testified that he arrived at the location later. He believed the ladders were positioned under the lighting fixtures so that someone could reach the fixtures or the wiring attached to them. Deputy Gordon believed that red handled shears were discovered on the motorcycle belonging to Appellant, while Deputy Taylor believed he collected the shears from Appellant.

Sergeant Chason described "scrapping" as the process of removing copper wiring from the shroud covering it and selling it at scrap yards. He testified that it was very common for persons to burglarize houses to get the copper wires and fixtures. He said that it appeared Appellant was "scrapping." Deputy Taylor also believed Appellant was "scrapping" because the banging he heard was consistent with pulling the wires off the rafters and the wood. Wayne testified that before the incident, there were only lawn mower parts and chain saw parts on the floor. The electricity was still working, but now, ninety percent of the electrical wire was missing.

John Teel, the custodian of the property, stated that his mother owned the property, that the property is for sale, and that it had not been occupied for approximately five years. He testified that the residence was still a habitation, one that a person could live in. One building had been used as a store and residence. One of the two other buildings was attached to the store and residence by a breezeway, but he was not sure if the breezeway was still intact. He stated that it had been used as a shop and storage. Wayne testified that before the Teels retired, they had a small convenience store front and a house in one building. He said that the building was part of the Teels' residence, and that he went inside the accessible buildings periodically. Judson and Sergeant Chason described the building as attached to the residence, and Judson stated that the Teels used to park their vehicles in it. A photograph of the property admitted into evidence shows a "no trespassing" sign in front of the property.

Appellant testified he and his wife, Ashley, wanted to look at the property to buy it as a place to live and have a mechanic business. However, he and Ashley were unemployed, they

4

had no money in the bank, and he was a convicted felon. He said he was "dreaming" to buy the property. Appellant testified that he drove his motorcycle to the front of the property, went around the side, and pulled it into the metal building where he was apprehended. He did not want anyone to see his motorcycle because he did not have a license or registration. According to Appellant, the building's doors were "somewhat" open by a piece of wood. He said he did not see the "no trespassing" sign on the property.

Appellant testified that once he was in the building, he adjusted and oiled the chain on his motorcycle using oil that he found on a shelf in the building. He stated that photographs admitted into evidence show oil on the ground where he was rolling the motorcycle back and forth while putting oil on the chain. However, he admitted that the photographs also show brown leaves around, and on top of, the oil stains. Appellant stated that he kicked the leaves over the stain to try and clean it up. He said the tools he used to oil and adjust the chain were located in a tool kit that he carried on his motorcycle, but he admitted that the tools were not coated in oil. Appellant denied cutting or stripping wire, and denying having wire strippers. He stated that the red handled shears were not on his motorcycle, but on a cabinet. He denied moving the ladders.

**Analysis**

In his brief, Appellant argues that the evidence is insufficient to show that the building he entered was a habitation. He contends the building had been vacant for a number of years and that whether it was currently fit for habitation was never addressed. Further, he argues, the building had been historically used strictly for commercial purposes.

In applying the relevant factors from ***Blankenship***, courts have found structures to be habitations that were vacant and unfurnished when the utilities were, or could have been, connected. *See **Hicks v. State***, 204 S.W.3d 505, 507 (Tex. App.—Amarillo 2006, no pet.) (structure vacant and unfurnished, but contained wiring and plumbing); ***Hollander v. State***, No. 09-05-00448-CR, 2006 WL 2623279, at *2-3 (Tex. App.—Beaumont Sept. 13, 2006, pet. ref'd) (structure vacant and unfurnished, but contained "hook ups" for water and electricity even though not turned on or working). Wayne stated that the electricity was working, and Teel testified that a person could still live in the residence.

"Appurtenant" is defined as "annexed to a more important thing." BLACK'S LAW DICTIONARY 123 (10th ed. 2004); *see also* TEX. PENAL CODE ANN. § 30.01(1) (defining "habitation" to include "each structure appurtenant to or connected with the structure"). One

court has described a garage as "necessarily connected with the use and enjoyment" of the house, and it is secondary or "incident to" the principal building, the house. *See **Jones v. State***, 690 S.W.2d 318, 319 (Tex. App.–Dallas 1985, pet. ref'd). An unattached garage may be considered to be a "structure appurtenant" to a residence and thus, within the statutory definition of a "habitation." ***Johnson v. State***, 844 S.W.2d 872, 874 (Tex. App.—Amarillo 1992, no pet.) (citing ***Jones***, 690 S.W.2d at 319); *see also **Darby v. State***, 960 S.W.2d 370, 372 (Tex. App.— Houston [1st Dist.] 1998, pet. ref'd) (finding unattached garage used to store items owner could not store in house as a "structure appurtenant" to habitation).

The evidence showed that the building Appellant entered may have been "attached" to the structure that was identified as a former residence and shop. Judson and Sergeant Chason described the building as attached to the residence. Judson stated that the Teels used the building to park their vehicles. Teel stated that the building was used as a shop and storage. However, even though Teel testified that the building was attached to the residence by a breezeway, he did not know if the breezeway was still intact. It is the fact finder's province to resolve any conflicts in the evidence, and we must presume that it did so in favor of the verdict. *See **Clayton***, 235 S.W.3d at 778. But regardless of whether the building was attached or unattached, the testimony was that the Teels parked their cars in it and used it as a shop and for storage. From this evidence, the fact finder reasonably could have determined that the structure in question was a habitation or a structure "appurtenant to" or "connected with" the residence and thus, within the definition of "habitation." *See **Blankenship***, 780 S.W.2d at 209; TEX. PENAL CODE ANN. § 30.01(1).

Further, Appellant argues that the evidence is insufficient to show that he entered the habitation with the intent to commit theft. He points out that he expressly denied intending to commit theft. However, intent to commit theft may be inferred from Appellant's conduct and the surrounding circumstances. *See **Turk***, 867 S.W.2d at 887. The evidence from which the trial court, as fact finder, could have inferred Appellant's intent to commit theft includes Appellant's forcible entry into the structure, ladders placed under light fixtures, wires cut from the rafters of the building, electrical wires cut from a panel box, cut conduit electrical wire, removed copper wiring, a bucket of copper wire shavings, and electrical wires lying on the floor. Wayne testified that the building was not in this condition before the incident, and that ninety percent of the electrical wire was missing. Further, Sergeant Chason and Deputy Taylor believed Appellant

was "scrapping," and Deputy Taylor stated that the banging he heard before entering the building was consistent with pulling wires from the rafters and wood of the building.

Regarding Appellant's contention that he was oiling the chain of the motorcycle, we again note that it is the fact finder's province to resolve any conflicts in the record, and we must presume that it did so in favor of its verdict. *See Clayton*, 235 S.W.3d at 778.

In summary, the fact finder reasonably could have concluded that Appellant entered the subject building, that the subject building was a structure appurtenant to or connected with the habitation, and that he intended to commit theft. Therefore, we conclude that the fact finder reasonably could have found the essential elements of burglary of a habitation beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 30.02(a)(1). The evidence is legally sufficient to support Appellant's conviction. Accordingly, we overrule his sole issue.

## DISPOSITION

Having overruled Appellant's sole issue on appeal, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered March 31, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2015**

**NO. 12-14-00129-CR**

**JEFFREY EDWARD ALLEN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd District Court

of Anderson County, Texas (Tr.Ct.No. 31319)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*