

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00139-CR

JEFFERY TODD ARCHER, APPELLANT

V.

THE STATE OF TEXAS

On Appeal from the County Court
Deaf Smith County, Texas,
Trial Court No. 21-0190, Honorable D.J. Wagner, Presiding

June 14, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Section 30.05(a) of the Texas Penal Code defines criminal trespass to occur when, among other things, a "person enters * * * on or in property of another * * * without effective consent and the person [] had notice that the entry was forbidden . . . ." Per statute, notice can be given through "fencing or other enclosure obviously designed to exclude intruders or to contain livestock." TEX. PENAL CODE ANN. § 30.05(b)(2). There is no dispute that Appellant, Jeffery Todd Archer, crossed such a border fence and entered onto the

property owned by Raymond DeChant. Although DeChant testified he would have provided Appellant consent to enter his land under other circumstances (i.e., if Appellant had not been carrying a firearm), such conditions were not present here.

Through three issues, Appellant challenges the sufficiency of the evidence, the trial court's refusal to submit two requested jury instructions, and the trial court's failure to grant a mistrial because of allegedly improper jury communication. We overrule Appellant's issues and affirm the judgment of the trial court.

## Background

An information alleged that Appellant intentionally and knowingly entered onto DeChant's property without effective consent, that Appellant had notice the entry was forbidden, and that at the time Appellant was carrying a handgun.[1] The State did not allege Appellant violated the law by remaining on DeChant's property after being given notice to depart, so we do not discuss that evidence here.[2] Evidence at trial showed Appellant and his family lived near Hereford, Texas, on property adjacent to DeChant's. A fence surrounded DeChant's property, where he kept chickens, a calf, and a horse.

---

[1] See TEX. PENAL CODE ANN. § 30.05(a). See also TEX. PENAL CODE ANN. § 30.05(d)(3)(C) (classifying an offense under section 30.05 a Class A misdemeanor if the accused carries a deadly weapon during the commission of the offense); *Ladouceur v. State,* No. 05-12-00366-CR, 2013 Tex. App. LEXIS 7792, at *5 (Tex. App.—Dallas June 25, 2013, no pet.) (mem. op., not designated for publication) (stating "[c]riminal trespass is normally a Class B misdemeanor. However, the offense is a Class A misdemeanor if the defendant carries a deadly weapon during the commission of the offense.") (cleaned up).

[2] See *Martin v. State*, No. 07-11-00102-CR, 2012 Tex. App. LEXIS 2587, at *3–5 (Tex. App.—Amarillo Mar. 30, 2012, no pet.) (mem. op., not designated for publication) (holding that when the State alleges only the elements of criminal trespass by entry, our review is therefore limited to that theory of criminal liability).

DeChant testified the fence was intended to contain his livestock, and said he considered anyone who crossed over the fence to be an "intruder."

Appellant and his family owned a dog that occasionally ventured onto DeChant's property. DeChant told Appellant's spouse he did not want the dog on his property. On February 21, 2021, DeChant saw Appellant's dog on his property eating one of his chickens. DeChant shot and killed the dog. When Appellant learned the news, evidence revealed he crossed the fence bordering DeChant's property "screaming and hollering," while waving a holstered handgun. At some point, Appellant's spouse also entered the property. DeChant contacted the sheriff's department, and Appellant was arrested for the offense of criminal trespass.

At trial, when asked if he had given Appellant permission to come onto his property on February 21, DeChant responded, "Not that day. No I hadn't." DeChant later testified he would have had no objection for Appellant to have entered his land except that Appellant was carrying a firearm at the time. DeChant also said:

- When Appellant brought a gun onto his property, DeChant felt Appellant was there to harm him.

- Without Appellant's presence to commit harm to DeChant, the two "would've sat down and visited."

- DeChant would have allowed Appellant to come on his property to retrieve the dog if Appellant had asked and not brought a gun.

- DeChant agreed with the prosecutor's statement that "if Mr. Archer had just come over and had a conversation with you, we would not be here today . . . ."

Other testimony at trial indicated that the families' children had crossed the border fence "many times" without complaint by DeChant.

3

A jury found Appellant guilty of the charged offense and the trial court assessed punishment at 180 days of confinement in the county jail, probated for one year, a fine of $1,000, and court costs.

## Analysis

**First Issue:  Sufficiency of the Evidence**

By his first issue, Appellant argues the State failed to present sufficient evidence that he entered the property of DeChant without his effective consent.  Our sufficiency determination is directed by the familiar standard of *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979).  We view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson,* 443 U.S. at 318–19; *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This standard gives full play to the trier of fact's responsibility of resolving conflicts in testimony, weighing evidence, and drawing reasonable inferences from basic facts to ultimate facts.  *Hooper,* 214 S.W.3d at 13 (citing *Jackson,* 443 U.S. at 318–19).  The trier of fact is the sole judge of the credibility of witnesses and the weight, if any, given their testimony.  *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.).  In a sufficiency review, "circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."  *Hooper,* 214 S.W.3d at 13.

Section 30.05(a) requires the State to prove that at the time Appellant entered onto DeChant's land on February 21, 2021, such entry was both "without effective consent"

4

and that Appellant "had notice that the entry was forbidden . . . ."  Notice that entry was forbidden to Appellant is evidenced by the presence of the fence that surrounded DeChant's land, as well as his testimony that the fence was designed to exclude intruders and contain livestock.  *See* TEX. PENAL CODE ANN. § 30.05(b)(2); *Salazar v. State,* 284 S.W.3d 874, 877 (Tex. Crim. App. 2009) ("[I]f there is some sort of indication of a separation of property in the form of a fence, a border, or even a sign, then the entrant has explicit notice that entry is forbidden.").

The question of whether Appellant had "effective consent"[3] to enter DeChant's land in spite of the fence required the jury to assess and resolve what Appellant accurately characterizes as "equivocal" testimony by DeChant.  On the one hand, DeChant testified he had never given Appellant permission to come onto his property on February 21, 2021. On the other hand, the jury received evidence about the past instances when family members crossed the fence without incident,[4] as well as DeChant's testimony that he would have not objected to Appellant entering his land if he hadn't been carrying a firearm at the time.  Consistent with our adherence to a legal standard that recognizes the jury's role in resolving evidentiary conflicts, we find that the evidence was such that a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt.  *Hooper,* 214 S.W.3d at 13 (citing *Jackson,* 443 U.S. at 318–19).  Moreover, even if we only considered DeChant's testimony that he would have implicitly given permission for Appellant to enter the land under other circumstances we could not find that DeChant

---

[3] According to the submitted jury charge, "'Effective Consent' means assent in fact whether express or apparent[.]"  *See also* TEX. PENAL CODE ANN. § 1.07(a)(11).

[4] No evidence suggests these individuals carried a firearm at the time.

gave effective consent on February 21 because the condition (i.e., not carrying a handgun) was not satisfied.

We overrule Appellant's first issue.

**Second Issue: Requested Defensive Instructions**

At the charge conference, Appellant requested, and the trial court denied, jury instructions based on subsections (d-3) and (f) of Penal Code section 30.05. In Appellant's second issue, he argues that the trial court's decision was in error. We disagree.

A defendant is entitled to an instruction on any defensive issue raised by the evidence if: (1) the defendant timely requests an instruction on that specific theory and (2) the evidence raises that issue. *Evans v. State,* No. 07-14-00145-CR, 2015 Tex. App. LEXIS 2724, at *6 (Tex. App.—Amarillo Mar. 23, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Rogers v. State,* 105 S.W.3d 630, 639 (Tex. Crim. App. 2003)). The evidence must touch upon each element of the defense. *Holloman v. State,* 948 S.W.2d 349, 350 (Tex. App.—Amarillo 1997, no pet.). A trial court's decision not to include an instruction on a defensive issue in the charge is reviewed for an abuse of discretion with the evidence viewed in the light most favorable to the defendant's requested submission. *Reynolds v. State,* 371 S.W.3d 511, 522 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

We begin with Appellant's complaint that the trial court erred in refusing to charge the jury with an instruction consistent with TEX. PENAL CODE ANN. § 30.05(d-3). In relevant part, subsection (d-3) makes it a Class C misdemeanor punishable by a fine not to exceed

6

$200 if the defendant enters the property, land, or building with a firearm and the sole basis for forbidding entry was the carrying of the firearm.  *See* TEX. PENAL CODE ANN. § 30.05(d-3).  This subsection was added by the 87th Legislature and made applicable to an offense committed on or after September 1, 2021.[5]  It is undisputed that the date of the alleged criminal trespass for which Appellant was convicted occurred nearly seven months before subsection (d-3)'s effective date.  Thus, the trial court did not err in refusing to submit the instruction, even if it was for a different reason.  *See Johnson v. State,* 490 S.W.3d 895, 908 (Tex. Crim. App. 2016) (concerning evidentiary ruling).

We next examine Appellant's complaint that the trial court erred in refusing to submit a jury instruction consistent with Subsection (f) of section 30.05.  Appellant points to the record evidence that he was alleged to have waved the handgun while still in its holster, and that the arresting officer testified to performing a background check on Appellant and discovering Appellant possessed a concealed handgun license.  This necessitates an examination of the text of Section 30.05(f), which states:

> It is a defense to prosecution under this section [30.05] that:
>
> (1) the basis on which entry on the property or land or in the building was forbidden is that entry with a handgun was forbidden; and
>
> (2) the person was carrying:
>
>> (A) a license issued under Subchapter H, Chapter 411, Government Code, to carry a handgun; and
>>
>> (B) a handgun:
>>
>>> (i) in a concealed manner; or

---

[5] Act of May 24, 2021, 87th Leg., R.S., ch. 809 §§ 17, 28, 29, 2021 TEX. GEN LAWS 1960, 1966, 1972–73.

(ii) in a [shoulder or belt] holster.

TEX. PENAL CODE ANN. § 30.05(f).[6]

There is no doubt that Appellant was carrying his handgun at the time, but was he carrying his license? The verb "carry" is not defined by statute, so we look to its ordinary meaning as aided by dictionary definitions. Webster's dictionary offers two definitions that are potentially applicable in this context: (1) "to get possession or control of : capture" (e.g*., she "carried off the prize")*; and (2) "to wear or have on one's person" (e.g*., "Police officers carry guns."*). Both definitions involve having physical possession and asportation of an item. CARRY, Merriam-Webster Dictionary, https://tinyurl.com/565y28ue (accessed on June 7, 2023). Black's Law Dictionary offers similar meanings, but also includes a definition that encompasses figuratively possessing or holding contractual rights, as in "the decedent did not carry life insurance." CARRY, Black's Law Dictionary (11th ed. 2019). This definition could potentially be extended to include instances when an individual held a recognized right (e.g., a license) even if it was not within one's physical possession at the time.

We believe the proper definition, in line with principles of statutory consistency, requires that an individual asserting an affirmative defense under section 30.05(f) present evidence that he physically possessed the license at the time he entered the land. The Texas Court of Criminal Appeals has described this tool of statutory construction in more detail:

---

[6] The version of subsection (f) of section 30.05 in effect at the time of the offense pertained to a person carrying a handgun in a concealed manner; or in a *shoulder or belt* holster. *See* Act of May 24, 2021, 87th Leg., R.S., ch. 809 §§ 17, 28, 29, 2021 Tex. Gen Laws 1960, 1966, 1972–73. We find this difference to be irrelevant for the reasons stated herein.

> [A] word or phrase that is used within a single statute generally bears the same meaning throughout that statute and that when a second statute refers to the first statute, words or phrases within the first statute will bear their same meaning in the second statute. As the United States Supreme Court has stated, "the normal rule of statutory construction" is that "identical words used in different parts of the same act are intended to have the same meaning." Although that presumption may give way if the legislature has clearly intended a different result, we are unable to find any clear indication that the legislature intended that the term "previously convicted" in Section 508.149(a) carry an entirely different meaning for purposes of good-time credits under Section 508.283(c) than it does for purposes of determining eligibility for release on mandatory supervision.

*Ex parte Keller*, 173 S.W.3d 492, 498 (Tex. Crim. App. 2005) (footnotes omitted).

To return to the relevant language, section 30.05(f) requires that the individual be "carrying" two things: (A) a license issued under Chapter 411 of the Government Code, and (B) a handgun. Reading the term "carry" to mean anything less than physical possession of the item would render a different meaning depending on whether one was reading subsection (f)(2)(A) or subsection (f)(2)(B). Put another way, equating "carrying" under section 30.05(f) with merely holding a recognized right would potentially criminalize conduct never intended under sections 30.05 and 30.06. *See* TEX. PENAL CODE ANN. § 30.05(d)(3)(C) (making it a Class A misdemeanor if the individual "carries" a deadly weapon during the commission of the offense); § 30.06(a) (trespass by license holder who "carries" a concealed handgun). *See also* TEX. PENAL CODE ANN. §§ 30.05(f-1 through f-4), 30.05(e-1 through e-4) (articulating affirmative defenses that distinguish carrying a firearm from storing one).

We find no evidence that at the time Appellant entered DeChant's property he carried his handgun license as required by subsection (f)(2)(A). While the arresting deputy's background check showed that Appellant was a handgun licensee, nothing of

9

record shows at the time in question it was in his physical possession. The trial court, accordingly, did not abuse its discretion by refusing to submit Appellant's requested subsection (f) instruction.

Appellant's second issue is overruled.

**Third Issue: Improper Jury Communication**

We end with Appellant's third complaint: that the trial court should have granted his motion for mistrial due to improper communications by a trial spectator with a juror. We overrule the issue.

On the morning of the third day of trial, the trial court received testimony from a deputy sheriff that he heard a spectator tell a juror to "look it through." The juror allegedly did not respond. Juror Lucio was also brought into the courtroom. She stated that on the preceding day, "I walked out of the restroom, and [the spectator] just said, 'You're really pretty.' And I said, 'Thanks,' and I walked off. So that's it." When the spectator was questioned, her account of the exchange was that she saw three female jurors near the restroom, and said, "'Hello. How are you? Good to see you. It's a beautiful day. I wish D.J. would turn on the air conditioner.'" The spectator denied saying to one of the jurors, "'You need to look it through' or 'Consider the facts.'"

The court then explained that it "had the bailiff question the jury and we were told the same thing as we were told this morning." Appellant's counsel argued he was left "in a bad situation" because he did not know what the bailiff said to the jury, but the bailiff was not questioned in open court. After Appellant's counsel moved for a mistrial, the trial

10

court offered to bring in each juror one-by-one for questioning, and to replace juror Lucio with an alternate. Appellant's counsel declined both proposals.

Thereafter, the court's charge to the jury included the following instructions:

> In deliberating upon this case, you must not refer to nor discuss any matter not in evidence before you. No juror may lawfully relate to any others any fact or circumstances of which he/she may have knowledge or information not introduced in evidence. Neither any nor all of the jurors may lawfully consider or discuss anything else so far as the evidence is concerned except the evidence introduced by the parties, admitted by the Court and not withdrawn from your consideration.

> No one has any authority to communicate with you except the officer who has you in charge. During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *See Ocon v. State,* 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). We review a trial court's decision to deny a motion for abused discretion. *See Ocon,* 284 S.W.3d at 884. The denial of the motion for mistrial must be upheld if, when viewing the evidence in the light most favorable to the denial, it was within the zone of reasonable disagreement. *Id.*; *Alcoser v. State,* No. 07-18-00032-CR, 2022 Tex. App. LEXIS 5722, at *4 (Tex. App.—Amarillo Aug. 9, 2022, pet. ref'd) (mem. op., not designated for publication).

A mistrial is used to halt proceedings when the error is so prejudicial that it makes the expenditure of further time and expense wasteful and futile. *Ocon,* 284 S.W.3d at 884 (citing *Ladd v. State,* 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It should be granted

11

only in instances where the record demonstrates the occurrence of an objectionable event so inflammatory that curative instructions would likely fail to prevent the jury from being unfairly prejudiced against the defendant. *Mason v. State,* Nos. 07-19-00066-CR, 07-19-00067-CR, 2020 Tex. App. LEXIS 5929, at *15 (Tex. App.—Amarillo July 29, 2020, no pet.) (mem. op., not designated for publication). We examine whether the trial court explored less drastic alternatives, including jury instructions and questioning the jury about the extent of any prejudice. *See Jenkins v. State,* 493 S.W.3d 583, 612 (Tex. Crim. App. 2016).

The record provides no clear indication about what juror Lucio heard from the spectator. Moreover, there is no record indication whether the bailiff, acting at the court's direction, transmitted any new information about the case to the jury. Based on our consideration of the evidence in the light most favorable to the trial court's ruling, we hold that the denial of Appellant's motion for mistrial was within the zone of reasonable disagreement, and therefore, the trial court did not abuse its discretion. Appellant's third issue is overruled.

## Conclusion

Having overruled Appellant's three issues, we affirm the judgment of the trial court. TEX. R. APP. P. 43.2(a).

Lawrence M. Doss
Justice

Do not publish.